STATE of Missouri, Respondent,

v.

Patrick PERRY, Appellant.

Patrick PERRY, Movant,

v.

STATE of Missouri, Respondent.

No. 61338.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 6, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Judith C. LaRose, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant appeals from his convictions by a jury of second degree burglary and stealing over one hundred fifty dollars and his consecutive sentences of fifteen and ten years respectively as a prior and persistent offender. He also appeals from the denial of his post-conviction motion pursuant to Rule 29.15.

We reverse and remand. In view of our disposition defendant's appeal of the denial of his Rule 29.15 motion is moot.

The burglary involved the business premises of Work Now located in Maplewood. On the morning of June 30, 1988, an owner of the business, James Quinn, found the office vandalized. Property from the pawn shop next door was missing and had apparently been removed from overhead. Entry to the pawnshop from the drop ceiling could be made by entry to the drop ceiling of the Work Now premises. The state presented the testimony of defendant's former girl friend, Anna Briscoe, that defendant had confessed to her having committed the break-in. Evidence was also adduced that at the time of his arrest he confessed his participation to the arresting police officers. The evidence was sufficient to support the verdict and defendant makes no claim to the contrary.

Defendant testified to the following. He had been in business with David Pero. Pero was the owner of an employment agency called Job Mart. He was also a police officer in the third district in the City of St. Louis subsequently terminated by the Police Department. Quinn had worked for Pero and defendant and signed a non-compete agreement. He left Job Mart to work for Work Now, a competing business to Job Mart. Defendant obtained a temporary restraining order preventing Quinn from continuing such employment. Pero was to pay defendant for his activities in preventing Quinn from continuing with Work Now but did not do so. Defendant quit his employment with Job Mart and went to Kansas City with Briscoe to begin another employment agency under the name of Job Mart of Kansas City. Someone from Job Mart in St. Louis was responsible for causing the Kansas City company's telephones to be disconnected and its advertising suppressed. Defendant was contacted by Quinn and the other owner of Work Now to help them with that company. He met with them on June 29 for three or four hours to discuss the business and then left. He did not burglarize or vandalize the premises or steal property from the pawn shop. Defendant's testimony would support

an inference that Pero had "framed" defendant in the burglary and stealing.

Defendant was arrested at Briscoe's home by three police officers, one from Maplewood and two from the third district of the City of St. Louis in which Briscoe's home was located. When the police arrived defendant hid in an upstairs stairwell. Briscoe advised the police that defendant was upstairs. Defendant testified that when he was arrested he was beaten by the St. Louis police officers and advised that this was a "favor" from Pero. He further testified that he did not confess to Briscoe and that the written confession he gave to the police officers was the result of beatings and threats made at the time of arrest and in the police department. In her testimony Briscoe denied being aware of any beatings at the time of the arrest and denied having told the police about any beatings.

On August 1, 1988, Briscoe went to Internal Affairs Division (IAD) of the St. Louis Police Department to make a statement in an investigation about David Pero. The statement is 27 pages in length most of it relating to an incident occurring on the Tuesday before the statement was made in which Pero and another man beat up Perry. At the end of the interview the following appears:

Sgt. Roth: How long ago was that now? [Referring to a prior arrest of Briscoe]
Anna Briscoe: Last month. First part of July, I guess. I'm not really sure. No, yeah, it was around, it was like right after Pat had got arrested the first time at my house when the police came and beat him at my house that first time.
Sgt. Roth: Beat him at your house?
Anna Briscoe: Yeah, the two police officers came and they searched my house and uh, they told him, they told me ... yeah, oh, it was terrible. Two police officers came to my house for a warrant for Pat's arrest, something to do with the Maplewood offense, two city cops and a Maplewood detective came to my house and uh, they kind of made me feel like I was held hostage and under arrest in my house and told me that they went there to meet over there for Pat Perry and that they knew he was in the house.

Sgt. Roth: Was he in there?

Anna Briscoe: He was in there. They found him in there but I thought he took off. And um, they found him upstairs and I heard a bunch of whoofing and ugh, you know, moans and groans, and I told the detective, because they didn't let me go upstairs, I told the detective, "They're up there, they're up there beating on him." He says, "Oh, I'll check it out. You can go out front and wait."

Sgt. Roth: What detective?

Anna Briscoe: Uh, Detective uh, Matt Konovey[1] from Maplewood. And so I went out in front and then when Pat came down they told him not to talk to me and they told me not to talk to him and they found some stolen property or something in my house that it didn't belong to me. I turned it over to 'em and signed a search and seizure paper or whatever it was.

In March 1990, the defendant sought discovery from the prosecutor pursuant to Rule 25.03 which included the following request:

"All written or recorded statements of persons whom the state intends to call as witnesses at any hearing or at the trial, including but not limited to, all reports written by police officers whom the state intends to call as witnesses, and all existing memoranda reporting or summarizing part or all of the oral statements of persons whom the state intends to call as witnesses, including, but not limited to, all police reports containing such reports or summaries, and all police reports relating to said charge;"

The statement of Briscoe was not produced in response to that discovery request. In July 1991, a subpoena *duces tecum* was served by defendant on the custodian of records for the St. Louis City Police Department Internal Affairs Division. The custodian of records refused to comply. Defendant did not request the court to order production of the documents requested in the subpoena. Trial commenced on September 17, 1991. On September 19, 1991, defendant sought and obtained a late endorsement of defendant's sister, Cynthia Williams, as a witness.

In the in-chambers conference the IAD interview was discussed. At trial, Williams testified that she had accompanied Briscoe to the IAD interview and had heard her tell an officer about the beating. Williams testimony closely paralleled the subsequently obtained transcript quoted above. On rebuttal Briscoe denied that Williams was present during the interview and again denied that defendant was beaten.

Prior to defendant's hearing for post-conviction relief he again served subpoenas seeking to obtain a transcript of Briscoe's IAD interview. The State moved to quash the subpoenas which motion was granted by the trial court. On September 30, 1993, a United States Magistrate Judge ordered the transcript produced pursuant to subpoena in a civil proceeding pending in District Court. The order of the magistrate judge, an affidavit by an attorney identifying the transcript as one produced pursuant to that order, and the transcript were attached to a motion to file them in this court which motion was taken with the case. The state does not directly challenge the authenticity of the attached documents but contends that because they were not part of the record below they should be stricken and cannot be considered by this court. Defendant's motion to file the exhibits is granted.

In *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court stated:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution . . .

A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the

---

1. One of the arresting officers was Matthew Ca-
novi.

result of guile,' to use the words of the Court of Appeals." [373 U.S. at 87, 83] S.Ct. [at] 1196–97.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) the Court stated that *Brady* arguably applies in three quite different situations, each involving discovery after trial of information which had been known to the prosecution but unknown to the defense. The first situation occurs when the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury. The second situation is characterized by a pretrial request for specific evidence. In that situation "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *Agurs,* 427 U.S. at 106, 96 S.Ct. at 2399. The third situation occurs when there is either no request by defendant or a general request for exculpatory matter. 427 U.S. at 106, 96 S.Ct. at 2399.

■ Here the defendant specifically requested, pursuant to Supreme Court Rule, statements of any witness whom the prosecution intended to call at trial which included Briscoe. Her statement to IAD concerning defendant's arrest was covered by defendant's request. Further, defendant identified specifically in the subpoena the conversation which was sought. No response was made to either request. At the in-chambers conference the IAD interview was discussed. While some question can be raised about the efforts the defense made to enforce the requests, the burden under *Brady* is on the prosecution. The state makes no contention it was not aware or should not have been aware of the interview and the transcript.

■ The information sought was clearly material. It went to the credibility of the prosecution witnesses (Briscoe and the arresting officers) concerning defendant's confessions. Because prior inconsistent statements may be utilized as substantive evidence in Missouri the statement supported defendant's contention that he was "framed" and that he confessed solely because he was beaten by the arresting police. *State v. Blankenship,* 830 S.W.2d 1 (Mo. banc 1992)

[8]. Because Briscoe testified directly contrary to the IAD interview and denied that she had said what the transcript showed she did say at that interview the first situation set forth in *Agurs*—perjury—is implicated. Because the defense specifically asked for the statement the second situation set forth in *Agurs* is also implicated. The situation before us falls outside the third situation discussed in *Agurs.* While defendant was generally aware that Briscoe went to IAD nothing establishes that prior to trial he knew that a transcript of that meeting existed or whether the matter of his arrest and beating was contained in the transcript. That information did not become known until release of the transcript pursuant to the order of the United States Magistrate Judge.

■ The state asserts three reasons "why the court did not commit plain error in failing to order, *sua sponte,* the disclosure of internal affairs records". First, it contends, the judge is under no obligation to *sua sponte* order disclosure of the records. Whatever the merits of that contention it is immaterial here. It is not the judge's conduct which we must inquire into but that of the prosecution. Violation of the requirements of *Brady* requires a new trial whether or not the court erred. The failure to disclose evidence, with or without bad faith, denies a defendant due process and the conviction cannot stand. Defendant was entitled to have the jury consider Briscoe's statement to IAD in assessing her credibility, that of the police officers, and defendant's defense.

■ Secondly, the state contends that there was no manifest injustice because in lieu of the records the trial court permitted the late endorsement of defendant's sister to testify about Briscoe's prior inconsistent statement. It borders on the frivolous to contend that the testimony of defendant's sister, refuted on the stand by Briscoe, is equivalent to the transcript of Briscoe's statement to the police which stated the very things she denied stating on the stand. Evidence is not to be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the

**614**

evidence. *Kummer v. Cruz,* 752 S.W.2d 801 (Mo.App.1988) [6, 7].

Finally, the state contends that the "internal affairs records, arguably, were not even discoverable or obtainable anyway." Sec. 610.021(3) & (13) RSMo 1986 provide:

"Except to the extent disclosure *is otherwise required by law,* a public governmental body is authorized to close meeting, records and votes, to the extent they relate to the following:

(3) Hiring, firing, disciplining or promoting an employee of a public governmental body ...

(13) Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment ..." (Emphasis supplied)

*Brady* is the law of the land. It requires disclosure of specified exculpatory information. Rule 25.03 is the law of this state. It requires disclosure of information requested by the defense. Sec. 610.021 specifically provides that the exceptions contained therein do not apply where disclosure is otherwise required by law. The state did not seek the protection of an *in camera* inspection by the court to determine whether portions of the transcript were not material and should not be disclosed to defendant. *See, State ex rel St. Louis County v. Block,* 622 S.W.2d 367 (Mo.App.1981). It simply refused to make available exculpatory information without explanation contrary to *Brady.*

The state has pointed out that the exhibits previously referred to and which we authorized filing in this court do not bear the certificate of a court. While we entertain no question that the exhibits filed in this court are the transcript of the interview of Briscoe by the Internal Affairs Division, and the order of the United States Magistrate Judge, the state should be afforded the opportunity to establish that they are not and that any such transcript differs materially from that before us. The state is granted ten days after the handdown of this opinion to furnish to this court documentation of the invalidity of the transcript filed in this court.

If no such documentation is furnished within ten days of the handdown of this opinion the judgment is reversed and the case remanded for new trial.

CARL R. GAERTNER, P.J., and AHRENS, J., concur.