Gary BLACK, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 85535.

Supreme Court of Missouri,
En Banc.

Nov. 23, 2004.

Melinda K. Pendergraph, Office of Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Breck K. Burgess, Asst. Attys. Gen., Jefferson City, MO, for Respondent.

LAURA DENVIR STITH, Judge.

Gary Black appeals from the denial of post-conviction relief from his conviction and death sentence for the first-degree murder of Jason Johnson. He alleges that his trial counsel was ineffective in failing to impeach four witnesses with prior inconsistent statements that he argues showed that the murder was not the result of deliberation. The motion court found that these failures were not the result of trial strategy, but found no prejudice.

This Court agrees that, in the circumstances of this case, defense counsel's failure to impeach these key witnesses with their prior statements about the incident in which Mr. Black stabbed the victim was ineffective. It also was so prejudicial as to undermine this Court's confidence in the outcome of the trial. Accordingly, this Court reverses the judgment. Pursuant to Rule 84.14, the case is remanded for a new trial on all issues. Because of the Court's resolution of this issue, it does not reach the other issues raised as to the failure to call a blood splatter expert and toxicologist, the failure to request submission of a second-degree murder instruction, or the failure to challenge other evidence or make other motions.

## I. FACTUAL BACKGROUND

The victim, Jason Johnson, was black; the movant, Gary Black, and his girlfriend, Tammy Lawson, are white. Mr. Johnson's death on the evening of October 2, 1998, grew out of movant's race-based reaction to the victim's behavior toward Tammy Lawson.

After leaving work on the day of the murder, Mr. Johnson went to a restaurant in Joplin. While the evidence is inconsistent as to how much he had to drink before the incidents leading to his death, it is clear that he had at least two or three beers with his friends, Andrew Martin and

Mark Wolfe, over the next few hours. The defense presented evidence that at the time of his death his blood alcohol content (BAC) was .29 and that Mr. Johnson had been "mouthy" to some girls at the restaurant earlier in the evening.[1] All agree that, after drinking at the restaurant, Mr. Martin and Mr. Johnson left in Mr. Martin's Ford F–150 truck to go to an area nightclub. Mr. Wolfe followed in his Camaro. On the way, they stopped at a convenience store, and Mr. Johnson went inside to purchase a can of chewing tobacco and a 40–ounce bottle of beer.

By chance, Mr. Black's girlfriend, Tammy Lawson, was in the same convenience store and Mr. Johnson stood behind her in the checkout line. She got upset, believing that Mr. Johnson was making a pass at her. Once she left the store and went to Mr. Black's car, she pointed Mr. Johnson out to Mr. Black as Mr. Johnson left the store holding the beer bottle in a paper bag. She said something, apparently describing the incident. According to her later statement to police, Mr. Black got angry and wanted to confront Mr. Johnson.

Once Mr. Johnson got back in the truck, they drove off, with Mr. Wolfe following. But, this time, Mr. Black and his girlfriend followed too. When she asked what he was going to do, Mr. Black answered that he was "going to hurt that nig____." Mr. Martin stopped the truck at a stoplight at 5th and Joplin, in front of a Joplin nightclub, and began talking to two girls, Michelle Copeland and Gloria Norman, who were standing just outside the driver's side door. At the same time, Mr. Black and his girlfriend pulled alongside the passenger side of the truck, next to where Mr. Johnson was sitting.

Tammy Lawson later told police that Mr. Black's anger increased when Mr. Johnson yelled at them, calling her a bitch and a whore, and the two men exchanged words from their vehicles. All further agree that Mr. Black thereafter stabbed and killed Mr. Johnson. But, they do not agree as to how that stabbing occurred. These differences are crucial, Mr. Black argues, for the jury was likely to find that they mark the difference between a murder after deliberation, thus making him guilty of first-degree murder, and a murder committed while seeking to injure the victim, but without deliberation or intent to kill, making him guilty of second-degree murder or voluntary manslaughter rather than first-degree murder.

The State presented testimony from the victim's friends, Andy Martin and Mark Wolfe, as well as from a witness outside the nightclub, Jamie Brandon, that Mr. Black got out of his car, walked over to the passenger-side window of the truck, reached in the window as the victim tried to open the door, and stabbed the victim in the left side of the neck, severing the jugular vein and nearly severing the carotid artery. As Mr. Black then returned to his car, the victim got out of the truck and staggered after him, throwing the 40–ounce beer bottle at him, bag and all. The victim then got back in the truck, bleeding seriously, and bystanders attempted to help slow the bleeding by applying pressure to the wound. Paramedics arrived and took the victim to the hospital. He underwent surgery, but died three days later, on October 5, 1998. Meanwhile, Mr. Black returned to his car, allegedly telling his girlfriend, "one nig____ down," and drove off. The State argued that this

---

1. By way of comparison, a person commits the crime of driving with excessive blood alcohol content if the person operates a motor vehicle with a BAC of .08 or more. Section 577.012, RSMo. Supp.2003.

evidence showed deliberation in that it showed he followed the victim's truck with the intended purpose of stabbing and killing him, rather than killing him in the course of a fight, without deliberation.

Mr. Black presented a different story. He denied that he deliberated about killing the victim. He said he killed Mr. Johnson in self-defense after the latter tried to hit him with the beer bottle, and that even if not acting in self-defense, the State at most proved second-degree murder in the course of a fight, not a deliberate stabbing. In support, Mr. Black presented the testimony of defense witnesses Gloria Norman and Ronald Friend, who testified that the victim got out of the truck before he began bleeding and that the victim and Mr. Black fought in the street. He also presented evidence that he did not stab the victim until *after* the latter swung at him with the 40–ounce beer bottle.

This evidence arguably was supported by forensic evidence that once the victim was stabbed, his blood would have spurted out heavily and spattered in a peculiar pattern, so that witnesses would have had to see substantial blood on Mr. Johnson once he was stabbed. If, as the defense witnesses indicated, witnesses did not see blood on Mr. Johnson until after he got out of the truck, then it would undermine the State's theory that Mr. Black stabbed the victim in the truck, rather than in a fight, and so undermine the State's claim that the killing occurred as a result of deliberation rather than passion.

The jury was thus left with two very different accounts of the incident—one offered by the defense and one offered by the State through its witnesses Mark Wolfe, Jamie Brandon, Andrew Martin, and defense witness Michelle Copeland. The jury had to pick which witnesses to believe. For this reason, Mr. Black argues, it was essential to impeach the testi-

mony of the witnesses relied on by the State. Defense counsel did impeach State's witness Andrew Martin in this manner, showing that in his initial statements to police he had said that the victim got out of the pickup *before* Mr. Martin saw blood on him, and that he saw the blood only as the victim returned to the truck, and that only at trial did he say that the victim began spurting blood while still in the truck.

But, defense counsel failed to impeach the testimony of Mr. Wolfe, Mr. Brandon, and Ms. Copeland, even though counsel did have prior inconsistent statements by these witnesses. Specifically, Mr. Wolfe had told one of the first officers on the scene that he saw Mr. Black and the victim get out of their vehicles and exchange words and saw a brown bag containing the beer bottle hit Mr. Black's head or arm. He told an investigator that he saw the victim connect with at least one blow to Mr. Black. This is inconsistent with his trial testimony that he saw Mr. Black jab at the victim through the window.

Similarly, Mr. Brandon told an officer at the scene that the men got out of their vehicles and exchanged blows in the middle of the road, which is at odds with his trial testimony that Mr. Black swung his hand through the window and then the victim got out. Michelle Copeland, too, told an investigator that she saw and heard the victim yelling at someone, saw him open the passenger door and get out, and at that time she saw no injury. This contrasts with her trial testimony that the victim remained in the pickup.

Had this evidence been admitted to impeach these witnesses, it also would have been admissible as substantive evidence. *Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423, 428 (Mo. banc 1985); *Sec.* 491.074, RSMo 2000. Counsel admitted at the post-conviction hearing that she had no trial strate-

gy for failing to impeach these witnesses. While the trial judge was not required to accept this self-analysis, he specifically found that the failure to impeach was not trial strategy.

There was also conflicting evidence as to how much Mr. Johnson, Mr. Wolfe, and Mr. Martin had to drink that night. The defense was able to introduce evidence that the victim's blood alcohol content was .29, but the State questioned the accuracy of the test result. Defense counsel could have supported its position by impeaching Mr. Martin by showing that, although at trial the latter said the victim got to the restaurant at 6:30 or 7:00 p.m. and just had a few beers, prior to trial he said the victim went directly to the restaurant after getting off work. Mr. Johnson got off work at 4:19 p.m. And, while Mr. Wolfe testified at trial that he was at the restaurant only once that night, in an earlier statement he admitted he was there twice on the night in question.

All of this evidence would have gone to impeach Mr. Martin's and Mr. Wolfe's ability to accurately perceive the events and to support the defense claim that the victim was belligerent, but again defense counsel did not use this evidence, and again trial strategy was not involved. Mr. Black argues this evidence, if utilized, would have helped undermine the State's evidence on the central issue of deliberation, an issue on which the record shows the jury was focused and about which it was confused. Specifically, the record reflects that, during its own deliberations, the jury circled the phrase "cool reflection" in the verdict-director and sent it to the judge along with a note stating, "Judge, please define this phrase." The judge told the jury to "please read the instructions and enter a verdict in accordance with the forms submitted." The jury found Mr. Black guilty of first-degree murder. In the second phase of the trial it recommended the death penalty, which the judge imposed.

On direct appeal, this Court affirmed. Mr. Black then filed this motion for post-conviction relief under Rule 29.15. The motion court denied relief, finding that, while trial strategy was not the reason for counsel's failure to impeach these witnesses, the failure "to confront Copeland or the other witnesses with a prior claimed inconsistent statement did not result in any prejudice to Mr. Black. Such evidence would have been cumulative and does not form the basis for any error." Because the death penalty was imposed, appeal of the denial of post-conviction relief was directly to this Court.

## II. STANDARD OF REVIEW

An appellate court will affirm the motion court's denial of a claim of ineffective assistance of counsel under Rule 29.15 unless its findings of fact or conclusions of law are clearly erroneous. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). A judgment is clearly erroneous when, in view of the entire record, "the reviewing court is left with the definite and firm impression that a mistake has been made." *State v. Landers*, 969 S.W.2d 808, 812 (Mo. App. W.D.1998). The findings of the motion court are presumed correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

To show ineffective assistance, Mr. Black must show: (1) that his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances; and (2) that he was prejudiced by counsel's failures. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). In order to satisfy the second prong of this

test, a movant is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. *See also Deck*, 68 S.W.3d at 426; *State v. Brown*, 902 S.W.2d 278, 295 (Mo. banc 1995). Where, as here, the issue is impeachment, movant must show that had the witness been impeached, it would have provided a viable defense or otherwise met the *Strickland* standard. *State v. Ferguson*, 20 S.W.3d 485, 506 (Mo. banc 2000).

## III. COUNSEL WAS INEFFECTIVE IN FAILING TO IMPEACH THE WITNESSES

■ The State does not contest the trial court's finding that counsel's failure to impeach was not trial strategy. Nor does it argue the motion court's holding that the impeachment evidence was cumulative was correct. But, it does argue that the failure to impeach these witnesses was not prejudicial. This Court disagrees.

■ As this and other courts have long recognized:

The trial court has broad discretion in determining the admissibility of substantive evidence and in determining the extent and scope of cross-examination, including impeachment of a witness by use of a prior inconsistent statement.

*Long v. St. John's Regional Health Center*, 98 S.W.3d 601, 605–06 (Mo.App. S.D.2003); *Reno v. Wakeman*, 869 S.W.2d 219, 223 (Mo.App. S.D.1993). The trial court's discretion is not unlimited, however. It must be balanced against the fact that, "[t]he right to cross-examination is essential and indispensable," *State v. Jaynes*, 949 S.W.2d 633 (Mo.App. E.D.1997), and "[t]he right to cross-examine a witness who has

testified for the adverse party is absolute and not a mere privilege." *Pettus v. Casey*, 358 S.W.2d 41, 44 (Mo.1962); *Doe v. Alpha Therapeutic Corporation*, 3 S.W.3d 404, 423 (Mo.App. E.D.1999). For this reason, a trial judge "has no discretion to prevent any cross-examination at all on a proper subject," *Merk v. St. Louis Public Service Co.*, 299 S.W.2d 446, 450 (Mo.1957), nor may that judge "exclude relevant and material facts simply because counsel seeks to elicit such facts on cross-examination." *Long*, 98 S.W.3d at 606, *quoting Reno*, 869 S.W.2d at 223.

■ Missouri courts have harmonized these principles by holding that a judge cannot preclude a defendant from impeaching a prosecution witness with prior inconsistent statements if the impeachment does not concern an immaterial or collateral matter. *State v. Dunson*, 979 S.W.2d 237, 242 (Mo.App. W.D.1998). "A matter is considered to be collateral if the fact in dispute is of no material significance in the case or is not pertinent to the issues developed." *Id.* "In contrast, a matter is not collateral if the alleged discrepancy involves a crucial issue directly in controversy or relates to any part of the witness' account of the background and circumstances of a material transaction, which as a matter of human experience he would have been mistaken about if his story was true." *Id.* (internal quotations omitted). "If a fact may be shown in evidence for any purpose independent of contradiction, it is not collateral." *State v. Goodman*, 738 S.W.2d 470, 474 (Mo.App. W.D.1987). Furthermore:

As a general rule, a witness may be asked any questions on cross-examination that tend to test accuracy, veracity, or credibility, or shake the witness' credit by injuring his or her character. [citation omitted] Where a witness' prior inconsistent statement relates specifically

to a paramount issue in the case, the trial court does not have discretion to prevent the impeachment of the witness through the use of that statement.

*Long,* 98 S.W.3d at 606.

■ As applied here, this means the trial court would have had no authority to prevent impeachment of the State's witnesses on matters related to a paramount issue or that affected their accuracy, veracity, or credibility had counsel sought to do so. By their nature, such issues are not collateral.

■ Nor, if not collateral, can the failure to offer this evidence be justified on the grounds that the evidence was cumulative, as the motion court found. It appears it so ruled because other witnesses had testified to Mr. Black's version of the incident. But, this does not make this evidence cumulative. "Evidence is said to be cumulative when it relates to a matter so fully and properly proved by other testimony as to take it out of the area of serious dispute." *State v. Kidd,* 990 S.W.2d 175, 180 (Mo.App. W.D.1999) (internal quotations omitted). While an appellate court will normally defer to a trial court's determination as to what evidence fits within this rule, a trial court does not have discretion to reject evidence "as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence." *Id. Accord, State v. Perry,* 879 S.W.2d 609 (Mo.App. E.D.1994).

*Perry* is instructive as to how to apply the cumulative evidence rule. The State there argued that no prejudice resulted from the trial court's exclusion of internal police department records impeaching the credibility of some of the State's key witnesses to defendant's alleged confession, because defendant's sister testified to the events that would have been shown by the records. The court rejected this argument, stating:

It borders on the frivolous to contend that the testimony of defendant's sister, refuted on the stand by Briscoe, is equivalent to the transcript of Briscoe's statement to the police which stated the very things she denied stating on the stand. Evidence is not to be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence.

*Perry,* 879 S.W.2d at 613.

The evidence defense counsel failed to offer here did not relate to "a matter so fully and properly proved by other testimony as to take it out of the areas of serious dispute." *Kidd,* 990 S.W.2d at 180. To the contrary, the impeaching evidence focused on the "very root of the matter in controversy." *Perry,* 879 S.W.2d at 613. The evidence of the prior inconsistent statements of Mr. Wolfe, Mr. Brandon, and Ms. Copeland related directly to the central issue of whether Mr. Black acted with deliberation or in a fit of rage or out of self-defense. As the fact that Mr. Black killed Mr. Johnson was conceded, this was the key issue in contention between the parties. Here, as in *Perry,* it borders on the frivolous to say that presenting defense witnesses as to how the killing occurred was the equivalent of showing that the State's key witnesses had previously agreed with all or part of defendant's recounting of that central, controverted fact. The weight of the evidence on this issue was central to the case.

Even more basically, the un-offered prior inconsistent statements as to how the death occurred simply are not cumulative of any other evidence, even had they related to a collateral matter. For, while a number of witnesses testified to the events

leading to the killing, what Mr. Black says should have been impeached with these prior statements was the accuracy of Mr. Wolfe's, Mr. Brandon's and Ms. Copeland's own perceptions of those events. No other witness had addressed the accuracy of these three witnesses' perceptions or showed that they had previously given inconsistent statements; indeed, no other evidence could more effectively have impeached their trial testimony than their own prior words. *See Lagud v. Kansas City Board of Police Commissioners,* 136 S.W.3d 786 (Mo. banc 2004) (prior admission of suspect impeaching his own trial testimony as to his intoxication could not by its nature be cumulative).

 Defense counsel also failed to impeach Mr. Martin with his prior statements showing that he, Mr. Wolfe, and the victim had been drinking far more heavily than Mr. Martin admitted on the stand. The State argues that this evidence, at least, was cumulative because other evidence was presented that showed that the victim, Mr. Johnson, had a .29 BAC at the time of his death. But, the State also continued to contest Mr. Johnson's intoxication, suggesting that the .29 BAC reading was an anomaly and that Mr. Martin's testimony that they only had a few beers was accurate. In this circumstance, it was ineffective to fail to introduce the prior statements tending to show more extensive drinking, for, "[i]t has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character." *Lagud,* 136 S.W.3d. at 793. *Lagud* further held that "intoxication of a witness as of the time the events took place which are the subject of the witness' testimony is not a collateral issue but bears directly upon the ability of the witness to accurately describe those events."

*Id.* at 794. It was, therefore, a proper subject of impeachment and not excludable as cumulative or collateral.

## IV. PREJUDICIAL EFFECT OF COUNSEL'S INEFFECTIVENESS

 In considering the prejudicial effect of movant's lawyer's ineffectiveness, "counsel's actions should be judged by her overall performance, the right to effective assistance of counsel may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Deck,* 68 S.W.3d at 429 (internal quotations omitted).

 The State argues that in order to prove prejudice, Mr. Black was required to have called each of the witnesses in question at his post-conviction motion hearing so that he could show what they would have stated had his counsel attempted to impeach them with their prior inconsistent statements. The court noted in rejecting a similar argument in *Clay v. State,* however, "[t]he 29.15 hearing is not a trial of the charges. Its purpose is to receive evidence touching on the adequacy of counsel's performance. The [witnesses'] testimony shows that important evidence was available if only counsel had looked for it." 954 S.W.2d 344, 348 (Mo.App. E.D.1997) (Blackmar, J.). In other words, a movant is not required to reenact how a hypothetical trial would have proceeded had particular evidence been utilized, but to show that counsel knew of the evidence and was ineffective in failing to use it, to movant's prejudice.

Here, counsel's failures went to the key issue of deliberation. The record in this case shows that the jury was focused on that issue. The jurors circled the words "cool reflection" in the first-degree murder verdict director and sent the verdict director to the judge with a note stating, "Judge, please define this phrase." The

judge refused to do so, and directed the jury to be guided by the instructions. It returned a verdict of guilty.

A similar situation occurred in *Deck*, in which this Court had to determine whether error by counsel in failing to object to instructions to the jury regarding whether or not to impose the death penalty was so prejudicial as to require a new trial. In determining that a new trial was required, this Court considered how this missing instruction might have impacted the jury and concluded:

> Most tellingly, the jurors … sent the judge a note stating they were confused about what mitigation meant in Instruction 8 and asking for a legal definition of the term … While the court's denial of their requests was proper, the requests show that the jury was focusing on the issue of mitigation and may have been confused by what it meant as used in the instructions.

68 S.W.3d at 431. *Deck* concluded that the failure was prejudicial.

As in *Deck*, when the jury here sent a note to the judge indicating confusion by circling the words "cool reflection" in the first-degree murder verdict director, the court did not err in refusing to define the term. Here also, the request shows that the jury was focusing on this issue and was confused by the evidence concerning deliberation.

That evidence was not overwhelming, consisting principally of testimony of State's witnesses who said Mr. Black reached into the truck and stabbed the victim. On direct appeal, the Court found that this evidence was sufficient to support the verdict. Had that testimony been impeached, little would have remained to support the finding of deliberation.[2] As noted in *Clay*:

> The relative strength or weakness of the prosecution's case is significant in determining whether any deficiencies in trial counsel's performance were prejudicial, because the question which must be answered is whether, but for the deficiencies, the result of the trial might have been different.

954 S.W.2d at 346–47.

The unoffered evidence, admissible both for impeachment and as substantive evidence, went to a central, controverted issue on which the jury focused during deliberations. If believed by the jury, there is a reasonable probability that the outcome of the trial would have been different. Accordingly, this Court determines that counsel's ineffectiveness was so prejudicial as to undermine this Court's confidence in the outcome of the trial. The motion court therefore erred in overruling the motion for post-conviction relief under Rule 29.15. The judgment is reversed. Pursuant to Rule 84.14, a new trial is ordered on all issues. The case is remanded.

WHITE, C.J., WOLFF, PRICE, TEITELMAN and LIMBAUGH, JJ., and BLACKMAR, Sr.J., concur.

RUSSELL, J. not participating.

---

2. Judge Wolff, in dissent, concluded that this evidence, even unimpeached, was not sufficient to support the verdict and would have remanded for entry of judgment on second-degree murder. *State v. Black*, 50 S.W.3d 778 (Mo. banc 2001).