W. Brent Powell, Judge
Heather Shallow, Michael Bishop, and Todd Bishop (collectively, Plaintiffs) appeal the circuit court's judgment, after trial by jury, in favor of Dr. Richard Follwell in the wrongful death medical negligence case of Plaintiffs' mother, Saundra Beaver. Plaintiffs alleged Follwell negligently caused Beaver's death when he perforated Beaver's bowel during a hernia repair surgery and failed to recognize and treat the bowel after the surgery. On appeal, Plaintiffs argue the circuit court abused its discretion when it permitted (1) Follwell to testify at trial to a causation opinion different from the opinion he gave during his deposition and (2) cumulative evidence from Follwell's expert witnesses. We find the circuit court did not abuse its discretion and affirm the judgment.
Factual and Procedural History
In 2012, Follwell performed surgery on Beaver to repair an abdominal hernia. Several hours after she was discharged from the hospital, Beaver began experiencing severe post-operative pain and was readmitted to the hospital. The next morning, Follwell reevaluated Beaver and discharged her a second time. When her condition worsened the following day, Beaver again returned to the hospital, where she was diagnosed with sepsis due to a serious infection in her abdominal cavity. Beaver later died as a result of the infection.
Beaver's three adult children, Heather Shallow, Michael Bishop, and Todd Bishop, subsequently brought a wrongful death action against Follwell, alleging he negligently perforated Beaver's bowel during surgery, causing a leakage of bowel contents *881 that led to Beaver's septic shock, and then failed to recognize or treat the bowel perforation after Beaver was readmitted. Plaintiffs presented their theory of liability through the testimony of an expert witness and also presented the testimony of a treating surgeon who performed surgery in an attempt to remove a section of Beaver's necrotic bowel and infected surgical mesh. Follwell testified in his own defense, acting as both a fact witness and an expert witness. Follwell denied he was negligent and presented two alternative theories of causation unrelated to his own conduct. The first theory alleged the harm was most likely caused by an undetectable tear that gradually ruptured sometime after Beaver was discharged from the hospital. He supported this theory with testimony from a single expert witness. Follwell's second theory alleged a complex preexisting condition caused Beaver's death. In support of this theory, Follwell called four expert witnesses: a general care surgeon, a cardiologist, a vascular surgeon, and a colorectal surgeon. The jury returned a verdict for Follwell.
After the court of appeals reversed and remanded, this Court transferred the case pursuant to article V, § 10 of the Missouri Constitution.
Standard of Review
The circuit court "enjoys considerable discretion in the admission or exclusion of evidence." Lozano v. BNSF Ry. Co. , 421 S.W.3d 448, 451 (Mo. banc 2014). The admission or exclusion of evidence will not be grounds for reversal absent a clear abuse of discretion. Id. A circuit court abuses its discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Id. This Court does not reverse a circuit court's judgment unless the error materially affected the merits of the action. Id. at 451-52.
Analysis
On appeal, Plaintiffs argue the circuit court erred because it permitted Follwell to testify regarding a new opinion for the first time at trial. Plaintiffs further argue the circuit court abused its discretion in allowing four experts, along with Follwell himself, to testify Follwell did not breach the standard of care or cause Beaver's death. Plaintiffs argue such testimony was needlessly cumulative because the scope of each expert's testimony was overlapping.
Follwell's deposition and trial testimony
Plaintiffs contend the first time they heard Follwell's opinion that an alleged vascular injury caused Beaver's bowel injury was at trial. Plaintiffs claim Follwell's trial testimony and opinion were substantially different from his testimony and opinion provided at his deposition.
"[W]hen an expert witness has been deposed and he later changes his opinion before trial or bases that opinion on new or different facts from those disclosed in the deposition, it is the duty of the party intending to use the expert witness to disclose that new information to his adversary." Washington by Washington v. Barnes Hosp. , 897 S.W.2d 611, 622 (Mo. banc 1995) (quoting Gassen v. Woy , 785 S.W.2d 601, 604 (Mo. App. 1990) ). This principle "is not intended as a mechanism for contesting every variance between discovery and trial testimony [because] [i]mpeachment of the witness will accomplish that goal." Sherar v. Zipper , 98 S.W.3d 628, 634 (Mo. App. 2003). Rather, its purpose is to relieve a party "who is genuinely surprised at trial." Id. This could happen "when an expert witness suddenly has an *882 opinion where he had none before, renders a substantially different opinion than the opinion disclosed in discovery, uses new facts to support an opinion, or newly bases that opinion on data or information not disclosed during the discovery deposition." Id. (emphasis added).
A central issue during the trial was the cause of the leakage of bowel contents that led to Beaver's septic shock and eventual death. Plaintiffs alleged Follwell negligently perforated the bowel during the surgery to repair Beaver's abdominal hernia. Follwell claimed he did not perforate the bowel but rather the tissue in Beaver's bowel tore as a result of a vascular injury. The vascular injury restricted blood supply to the bowel, medically referred to as ischemia, and the restriction of blood supply caused the bowel to deteriorate or die, medically referred to as necrosis, resulting in the necrotic bowel tissue tearing.
When asked at his deposition what caused the ischemia or lack of blood supply to Beaver's bowel, Follwell testified in relevant part as follows:
[Follwell]: I would not anticipate the bowel to be necrotic or dying.
[Plaintiffs' attorney]: Why not?
[Follwell]: For a hole or a perforation, that's not common.
* * *
[Plaintiffs' attorney]: But 24 hours later, you don't think there would have been dead bowel?
[Follwell]: No.
[Plaintiffs' attorney]: I'm sorry. Explain that to me again.
[Follwell]: I wouldn't anticipate dead bowel for any reason, unless there was some sort of vascular injury.
* * *
[Plaintiffs' attorney]: And what caused the ischemia?
[Follwell]: I don't know.
Although Follwell opined he did not know what specifically caused the lack of blood supply or ischemia to Beaver's bowel, Follwell testified prior to this statement that ischemia or the lack of blood supply is caused by vascular injury. After Follwell said he didn't know what caused the ischemia, he also testified as follows:
[Plaintiffs' attorney]: What are the general causes of ischemia?
[Follwell]: Compromise to the blood supply at the time of surgery, emboli from whatever cause, whether they be blood clots, when (sic) they be fragments of arthrosclerotic [sic] tissue.
[Plaintiffs' attorney]: I asked you what caused her ischemic bowel ..., and you told me you didn't know?
[Follwell]: Correct.
[Plaintiffs' attorney]: Then I asked you what the potential causes are. So we'll go with her potential causes.
[Follwell]: Injury of the blood supply at the time of surgery.
* * *
[Plaintiffs' attorney]: or emboli?
[Follwell]: Emboli or scar tissues which could potentially compromise the blood supply.
* * *
[Plaintiffs' attorney]: Is that a clot?
[Follwell]: Blood clots or pieces of arthrosclerotic [sic] tissue; they are emboli.
At trial, Follwell's attorney asked Follwell if he had an opinion as to whether Beaver's necrotic or dead bowel could occur as a result of anything other than a vascular injury. Plaintiffs objected, arguing Follwell's response to this question would be inconsistent with his earlier testimony because, when asked during his deposition what caused the lack of blood *883 supply or ischemia to Beaver's bowel, he answered, "I don't know." The circuit court allowed Follwell to respond. The exchange between Follwell's attorney and Follwell proceeded in relevant part:
[Follwell's attorney]: Do you have an opinion whether or not dead bowel, necrotic bowel ... could occur as a result of anything other than a vascular injury in this patient?
* * *
[Follwell]: Yes, I have an opinion.
[Follwell's attorney]: And that opinion is?
* * *
[Follwell]: That it was a vascular injury.
Similar to his deposition response, Follwell repeated his belief that necrotic or dead bowel could only be the result of a vascular injury. This testimony was neither new nor contradictory to the opinion given at his deposition. To the extent Follwell's testimony was different, he was simply stating what specifically caused ischemia or a lack of blood supply to Beaver's bowel rather than what generally restricts blood supply to the bowel. As such, his trial testimony was not "substantially different ... than the opinion disclosed in discovery." Sherar , 98 S.W.3d at 634 (emphasis added). Allowing Follwell to testify at trial that a vascular injury caused Beaver's necrotic or dead bowel was not so arbitrary and unreasonable as to indicate a lack of careful consideration by the circuit court and, therefore, it was not an abuse of discretion to allow the testimony.
Cumulativeness of expert testimony
Plaintiffs argue the circuit court erred by allowing four experts, in addition to Follwell, to give expert opinions about the standard of care and causation because the testimony was cumulative and should have been excluded.
Pursuant to § 490.065,[1] a circuit court may allow an expert to testify if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." "[A]dmission of expert evidence requires the trial court to apply the same standards for relevance and admissibility that apply to other types of evidence." Lozano , 421 S.W.3d at 451 n.2. "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." State v. Davis , 318 S.W.3d 618, 639 (Mo. banc 2010) (internal quotation marks omitted). But the "probative value of logically relevant evidence must be weighed against the risks it poses of unfair prejudice, cumulativeness, confusion of the issues, misleading the jury, undue delay or waste of time." Id. at 640. If the costs of admitting evidence substantially outweigh the benefits, the evidence is not "legally relevant" and must be excluded. Id.
"Evidence is said to be cumulative when it relates to a matter so fully and properly proved by other testimony as to take it out of the area of serious dispute." Black v. State , 151 S.W.3d 49, 56 (Mo. banc 2004). A circuit court "does not have discretion to reject evidence as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence." Id. (internal quotations omitted); see also *884 State v. Kidd , 990 S.W.2d 175, 180 (Mo. App. 1999) ; Smith v. Wal-Mart Stores, Inc. , 967 S.W.2d 198, 207 (Mo. App. 1998) (overruled on other grounds by Badahman v. Catering St. Louis , 395 S.W.3d 29 (Mo. banc 2013) ); State v. Perry , 879 S.W.2d 609, 613-14 (Mo. App. 1994) ; Kummer v. Cruz , 752 S.W.2d 801, 808 (Mo. App. 1988).
Over Plaintiffs' objections, the circuit court allowed Follwell and four other experts to testify as to whether Follwell breached the standard of care and what caused Beaver's death. Follwell contends, in a wrongful death action arising from medical negligence, the very root of the matter in controversy is whether the defendant breached the standard of care and causation; therefore, this evidence was not cumulative under Missouri law. We agree.
At trial, Plaintiffs presented expansive testimony from one expert. Plaintiffs' expert testified Follwell injured Beaver's bowel and Follwell's treatment fell below the standard of care. In response, Follwell had four experts testify to the contrary. The first expert to testify, a board-certified doctor in general surgery and critical care medicine, testified primarily about Follwell's compliance with the standard care, although he also touched upon causation. After the first expert's testimony, Plaintiffs objected to further expert testimony from the cardiologist, vascular surgeon, and colorectal surgeon, arguing the testimony would be cumulative. Although the circuit court overruled the objection, the court advised Plaintiffs they could continue to object if the testimony did become unduly cumulative. The next witness, a cardiologist, testified without objection solely in response to Plaintiffs' expert witness testimony. During the vascular surgeon's testimony, Plaintiffs renewed their cumulative objection, and the circuit court again overruled the objection and noted, while the testimony could reach a point of being cumulative, it had not yet reached that point. The circuit court further noted the vascular surgeon had "his own section" of testimony. Prior to the colorectal surgeon's testimony, Plaintiffs again objected on the ground the testimony would be cumulative. The circuit court again overruled the objection, noting "each one of the experts [has] a different specialty" and they all added "their own parts."[2]
A careful review of the trial transcripts indicates Follwell and his experts testified about the very root of the matter in controversy; the evidence therefore, was not cumulative. While the expert testimony overlapped at times, the experts testified about their own specialties and offered their own parts, as the circuit court noted. When the expert testimony did overlap, the overlapping testimony went to the issue of the standard of care and causation-the "very root" of a wrongful death action arising from medical negligence. See Sundermeyer v. SSM Reg'l Health Servs. , 271 S.W.3d 552, 554 (Mo. banc 2008) (concluding a plaintiff must prove the medical provider "failed to meet a required medical standard of care, that the acts or omissions were performed negligently, and that its *885 acts or omissions caused [the decedent's] death"). For this reason, the expert testimony was not cumulative under Missouri law. See Black , 151 S.W.3d at 56 ; Kidd , 990 S.W.2d at 180 ; Smith , 967 S.W.2d at 207 ; Perry , 879 S.W.2d at 613-14 ; Kummer , 752 S.W.2d at 808. Further, "Even if evidence is cumulative, that alone is not sufficient to exclude its admission." Nelson v. Waxman , 9 S.W.3d 601, 605 (Mo. banc 2000).
This does not mean the number of experts who may testify about the very root of the controversy on behalf of a party is limitless and always legally relevant. The probative value of logically relevant collective evidence going to the very root of the controversy must also "be weighed against the risks it poses of unfair prejudice." Davis , 318 S.W.3d at 640. If the prejudicial effect substantially outweighs the probative value, the evidence is unfairly prejudicial, not legally relevant, and must be excluded. See State v. Barriner , 34 S.W.3d 139, 147-48 (Mo. banc 2000). Excessive expert witnesses can create the risk the trier of fact will resolve differences in expert witness opinions by the number of experts called instead of giving due consideration to the quality and credibility of each expert opinion. See Midwest Materials Co. v. Village Dev. Co. , 806 S.W.2d 477, 495 (Mo. App. 1991) ("Evidence is prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case."). While expert witnesses testifying about the very root of the controversy have purpose and are not needlessly repetitive, such evidence remains subject to exclusion if the prejudicial effect of the testimony substantially outweighs the probative value. See id.
The circuit court "enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." Lozano , 421 S.W.3d at 451. Whether to exclude evidence on grounds of unfair prejudice rests in the discretion of the circuit court. See State v. Williams , 548 S.W.3d 275, 286-88 (Mo. banc 2018). The circuit court is uniquely positioned to evaluate the testimony of witnesses and determine its prejudicial impact when prompted by a timely objection. See Lozano , 421 S.W.3d at 451. When considering the testimony of Follwell's multiple expert witnesses, the circuit court showed "careful, deliberate consideration" of Plaintiffs' objections and articulated in each instance that the effect of the testimony had not become so unfairly prejudicial as to warrant exclusion. See id. The circuit court did not abuse its discretion.
Conclusion
Accordingly, the judgment is affirmed.
Fischer, C.J., Wilson, Russell, Breckenridge and Stith, JJ., concur;
Draper, J., dissents.

All statutory citations are to RSMo 2000.

While Plaintiffs cite multiple excerpts from the transcript alleging this testimony should have been excluded as cumulative, Plaintiffs did not make timely objections to most, if not all, of the questions eliciting this testimony. When portions of a witness' testimony are alleged to be cumulative and portions of the testimony are not, an objection to the cumulative evidence must be made after each question seeking to elicit the objectionable testimony. See St. Louis Cty. v. River Bend Estates Homeowners' Ass'n , 408 S.W.3d 116, 125 (Mo. banc 2013) ("To properly preserve a challenge to the admission of evidence, the objecting party must make a specific objection to the evidence at the time of its attempted admission.").