Esther SHERAR and Denise White, Appellants,

v.

Dr. Ronald ZIPPER, D.O. and Independent Orthopaedics and Sports Medicine, P.C., Respondents.

No. WD 60745.

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2003.

Application for Transfer Denied April 1, 2003.

Steven Alan Ediger and Lonny Lane Walters, Kansas City, for Appellant.

D. Bruce Keplinger, Overland Park, KS, for Respondent.

RONALD R. HOLLIGER, Judge.

The case at bar concerns an action for wrongful death brought by Esther Sherar and Denise White, plaintiffs (hereinafter "Plaintiffs"), against Dr. Ronald Zipper, D.O. and Independent Orthopaedics and Sports Medicine, P.C. (hereinafter "Dr. Zipper"). At trial the jury entered its verdict in favor of Dr. Zipper. Plaintiffs contend that the trial court erred in granting Dr. Zipper's motion to exclude certain testimony by their medical causation expert on the ground that it constituted surprise. Alternatively, they argue that the trial court erred in failing to grant Plaintiffs' motion for new trial which was premised, in part, upon the improper exclusion of that testimony. Finding that the trial court abused its discretion in excluding the testimony and denying Plaintiffs' motion for new trial, we reverse and remand the case for retrial.

### FACTS AND PROCEDURAL BACKGROUND

Dr. Zipper performed knee surgery on Bobby White, the decedent, on October 9, 1996. Prior to the surgery, the decedent was referred to a cardiologist for EKG testing. Those tests revealed signs that the decedent had previously suffered a heart attack. The decedent was unaware of having had a prior heart attack and was not informed of the cardiologist's findings.

Those findings, however, were included in the decedent's medical records and were available to Dr. Zipper prior to the decedent's surgery.

Dr. Zipper did not review those records prior to the surgery, however. No cardiac complications arose during the surgery. Roughly two months later, on December 12, 1996, the decedent suffered a fatal heart attack. The Plaintiffs brought suit against Dr. Zipper, contending that, had Dr. Zipper reviewed the decedent's records prior to surgery, the decedent would have been referred to a cardiac specialist and provided treatment that would have prevented his subsequent heart attack.

Plaintiffs' causation expert, Dr. Fintel, was deposed on two occasions. The first was a "discovery deposition," where Dr. Fintel was questioned almost exclusively by Dr. Zipper's counsel. The second deposition was a videotaped "evidentiary deposition" conducted several days before trial, as Dr. Fintel was apparently unable to provide live testimony at trial. Dr. Zipper's counsel filed a motion in limine seeking to exclude certain portions of that subsequent deposition, based upon a claim that the challenged portions constituted surprise because he expressed opinions not given in his discovery deposition. During trial, the court took up the specific objections raised by Dr. Zipper's counsel during the evidentiary deposition. The question and answer within the evidentiary deposition at issue in this appeal dealt with the causation element of Plaintiffs' wrongful death claim:

Q [By Plaintiffs' Counsel]: And so my question is, then: To a reasonable degree of medical certainty, had that treatment been implemented in October of '96, based on everything that we know about reducing the risk of death, do you have an opinion as to whether or not Bobby White would have survived past the date that he died, December of '96?

\* \* \*

THE WITNESS: Yes, I have an opinion, and my opinion is that he would have survived because of what we know to be the favorable prognosis of patients placed on all these treatments. That's how we think as cardiologists. That's why we use the treatments that we do.

While there were other portions of the evidentiary deposition excluded by the trial court, this is the only passage relevant to the present appeal. The sole premise which Dr. Zipper relied upon at trial to exclude the above portion of Dr. Fintel's evidentiary deposition was surprise.[1] Specifically, he argued that Dr. Fintel's testimony in that portion of the deposition differed from his earlier discovery deposition by opining that the decedent would not have died, had his EKG results been disclosed and had he been referred to a specialist. Much of Dr. Fintel's testimony at both depositions concerned the degree to which studies have found that certain treatments appear to reduce the chance of heart attacks. Dr. Zipper's counsel characterized such evidence as testimony relating to a claim of loss of chance, rather than testimony regarding causation in Plaintiffs' wrongful death claim.

---

1. At oral argument, Dr. Zipper's counsel suggested that the testimony could have been excluded on grounds that the question was leading. While the objection raised at the evidentiary deposition included grounds that the question was "leading and suggestive," such grounds were not raised to the trial court. Instead, the trial transcript indicates that counsel was standing only upon his objection that the testimony constituted surprise.

Despite Plaintiffs' argument that Dr. Fintel had rendered similar testimony in the discovery deposition, the trial court sustained Dr. Zipper's objection to the above testimony, and that portion of the evidentiary deposition was not replayed for the jury. Dr. Zipper's counsel subsequently argued in closing argument that Plaintiffs had failed to present evidence that the decedent would not have died from the heart attack if Dr. Zipper would have reviewed the decedent's chart before surgery and referred him to a specialist.

At the conclusion of trial, the jury rendered its verdict in favor of Dr. Zipper. Plaintiffs then filed their motion for new trial contending, in part, that they were entitled to a new trial due to the improper exclusion of the above testimony from Dr. Fintel. The trial court overruled that motion. The present appeal follows.

The Plaintiffs present two interrelated points on appeal. First, they contend that the trial court committed reversible error in excluding the previously discussed portions of Dr. Fintel's evidentiary deposition. Second, they argue that the trial court erred in denying their motion for new trial, which was also premised upon the improper exclusion of that testimony.

## STANDARD OF REVIEW

■ Our review of a trial court's exclusion of testimony is reviewed upon an abuse of discretion standard. *See Still v. Ahnemann*, 984 S.W.2d 568, 572 (Mo.App. 1999). The trial court has broad discretion to take corrective action including the exclusion of evidence on grounds of "surprise" when it was not disclosed in response to relevant discovery. Similarly, the denial of a motion for new trial is

reviewed upon an abuse of discretion standard. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo. banc 1993).

■ In reviewing for an abuse of discretion, we presume the trial court's ruling is correct, and reverse only when that "ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). *See also Fairbanks v. Weitzman*, 13 S.W.3d 313, 327 (Mo.App.2000).

■ Before evaluating the exercise of that discretion, we note that, to succeed on a motion for new trial, the moving party must establish "that trial error or misconduct of the prevailing party incited prejudice in the jury." *Keene Corp.*, 855 S.W.2d at 372. Our inquiry, then, must proceed in two steps. First, we must determine whether it was error to exclude the testimony in question. Second, if the exclusion was improper, we must ask whether Plaintiffs were prejudiced by the exclusion of that testimony. If either question is answered in the negative, then we will affirm.

## DID DR. FINTEL OFFER "SURPRISE" TESTIMONY AT THE EVIDENTIARY DEPOSITION?

■ In determining whether the exclusion of the testimony was improper, we must ask whether that testimony constituted surprise. The trial court is vested with discretion to exclude testimony,[2] if an ex-

---

**2.** We note, however, that exclusion of testimony is not always the appropriate sanction when an expert renders "surprise" testimony. Depending on the circumstances of the case,

it may be appropriate to permit a continuance of the trial or a recess to allow the objecting party to conduct further discovery regarding the expert's opinion. *See Mo. State Park Bd.*

pert provides different testimony from that disclosed in discovery. *See Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo.App.1990). That may occur if the expert changes the nature of his opinion or relies upon new or different facts than previously disclosed. *Id.* This principle has been adopted to further two objectives of the rules of discovery. *See id.* at 603. First, it encourages disclosure of the facts and opinions held by experts. *See id.* Second, it emphasizes a party's responsibility to supplement such disclosure when the initial disclosure is no longer correct. *See id.*

As outlined above, Dr. Zipper contends that the challenged testimony differed from that offered in his discovery deposition. Specifically, he argues that Dr. Fintel rendered no opinion in the discovery deposition regarding whether the decedent would have survived had Dr. Zipper referred him to a specialist. Put another way, he argues that Dr. Fintel did not opine that the decedent's death was caused by the alleged omissions by Dr. Zipper.

■ Further, Dr. Zipper also contends that the testimony offered by Dr. Fintel at the discovery deposition concerned whether the decedent had suffered a "loss of chance" due to Dr. Zipper's inaction. During the discovery deposition, Dr. Fintel testified at great length regarding the degree to which the decedent's chances of survival were lessened by the failure of Dr. Zipper to disclose the EKG results and to refer the decedent to a cardiologist. The sole cause of action pled by Plaintiffs was wrongful death. While some of Dr. Fintel's testimony might facially appear to have had some application toward a "loss of chance" claim, no such claim was asserted by Plaintiffs. Further, such a claim would have been improper, as loss of chance actions may only be brought

by the decedent's personal representative. *See Holloway v. Cameron Community Hosp., Inc.*, 18 S.W.3d 417, 422 (Mo.App. 2000) (citing Section 537.020, RSMO; *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 686 (Mo. banc 1992)).

Dr. Zipper's contention that the testimony was relevant solely to a loss of chance action is based on a misunderstanding of the nature of statistical evidence of probability and the difference between an action for wrongful death and loss of chance. Despite Dr. Zipper's contention to the contrary, such testimony concerning the reduction in heart attack risk through various therapies was not necessarily relevant solely to a "loss of chance" claim. *Baker v. Guzon*, 950 S.W.2d 635 (Mo.App.1997), contains a long and well-reasoned discussion of the role of statistical evidence in wrongful death actions. As discussed in *Baker*, reference to findings that certain therapies or treatments correspond to a specific reduction in the risk of death or injury are frequently relevant in explaining why an expert's opinion is held to a reasonable degree of medical certainty. *See id.* at 643–44. While Dr. Zipper's counsel may have been confused as to the purpose of Dr. Fintel's deposition testimony regarding the statistical likelihood that certain therapies would reduce the chance of heart attack, that testimony was relevant to the issues at bar in this wrongful death action.

■ This leaves us with the question of whether the trial court properly excluded Dr. Fintel's testimony on the basis of surprise. The principle enunciated in *Gassen, supra*, is intended to protect a party from the failure of an expert to disclose his opinion or the facts that he bases that opinion on during the discovery process. It is important because the only way to

*v. McDaniel*, 473 S.W.2d 774, 776 (Mo.App.    1971).

discover such opinions of experts is through a deposition. *See* Rule 56.01(b)(4)(b). It is not intended as a mechanism for contesting every variance between discovery and trial testimony. Impeachment of the witness will accomplish that goal. Rather, the *Gassen* principle is intended to provide relief to the party who is genuinely surprised at trial when an expert witness suddenly has an opinion where he had none before, renders a substantially different opinion than the opinion disclosed in discovery, uses new facts to support an opinion, or newly bases that opinion on data or information not disclosed during the discovery deposition.

■ To rely upon the *Gassen* principal, the attorney deposing the witness must ask for the expert's opinion and/or the underlying facts or data. *Blake v. Irwin,* 913 S.W.2d 923, 931 (Mo.App.1996). It appears herein that during the discovery deposition, counsel for Dr. Zipper never expressly asked the ultimate question on causation in the usual technical language. He, therefore, claims that he was surprised by Dr. Fintel's evidentiary deposition testimony that he had an opinion on that subject.

A review of the record belies Dr. Zipper's claim of surprise. Indeed, Dr. Zipper's counsel elicited testimony from Dr. Fintel that included his opinion that the decedent's death would have been prevented had Dr. Zipper referred the decedent to a specialist (italics added):

Q So my question to you, sir, do you have an opinion, if Mr. White had been referred to a cardiologist, whether something different would have happened in his medical course?

A Yes.

Q And what is that opinion?

A *My opinion is that had Mr. White been referred to an internist or a cardiologist,* it is likely in some hospitals the referral pattern would be to a primary care physician who would then move to a cardiologist as normal findings would develop as they surely would with the testing I'll describe, *that Mr. White would not have succumbed in December 1996 to his fatal cardiac arrhythmia.*

And later, Dr. Zipper's counsel asked in the discovery deposition:

"So how is it—tell me the basis for the opinion you have given me that he wouldn't have died in December 96 if he had been referred for this diagnosis and treatment."

Adopting Dr. Zipper's argument would open the door to serious concerns. Specifically, a fundamental hazard arising from the position advocated by Dr. Zipper's counsel is the promotion of a form of sandbagging by counsel. Under his arguments, deposition counsel could ask general questions regarding the nature of an expert's opinion, yet refrain from asking "ultimate issue" questions of the expert. (This tactic might be legitimately employed to prevent the other party from being able to use the deposition testimony in lieu of trial testimony.) Then, when the time comes for trial or "evidentiary" deposition, counsel could claim "surprise" and seek to have the testimony excluded.

That situation is not present here, as Dr. Fintel clearly testified at both the discovery and evidentiary deposition that the decedent would not have died had Dr. Zipper referred him to a cardiologist. Dr. Zipper is correct, admittedly, that Dr. Fintel's testimony at the discovery deposition did not contain the language "to a reasonable degree of medical certainty." Nevertheless, the substance of the excluded testimony from the evidentiary deposition was broached in the discovery deposition.

There was no surprise to Dr. Zipper's counsel at the second deposition.

This is not a situation in which the expert previously testified that he did not have an opinion as to whether the decedent's heart attack would have been prevented had he been referred to a specialist. Nor is it a situation in which the expert opined that the decedent's heart attack would not have been prevented by such referral. As such, Dr. Zipper cannot contend that Dr. Fintel's testimony at the evidentiary deposition had substantially changed from that offered by him at the discovery deposition. Put another way, it does not appear that Dr. Fintel's testimony at the evidentiary deposition conflicted with that offered by him at the discovery deposition. Indeed, he offered materially the same ultimate opinion at both depositions.[3]

Given that the Dr. Fintel's excluded testimony did not constitute surprise testimony, we conclude that the trial court erred in excluding the challenged portion of Dr. Fintel's evidentiary deposition. In order to reverse the judgment below, however, we must find that the exclusion was material, resulting in prejudice against the Plaintiffs.

## WERE PLAINTIFFS PREJUDICED BY THE ERRONEOUS EXCLUSION OF TESTIMONY?

█ As stated previously, it is not enough that the trial court improperly excluded a certain portion of Dr. Fintel's testimony. To constitute reversible error, we must also conclude that Plaintiffs were prejudiced by the exclusion of said testimony. For error to be prejudicial, we must decide whether the exclusion of the testimony had a material effect upon the outcome of the case. Rule 84.13(b). We note, from the outset, that the trial court characterized the case as "close," suggesting that even small differences in the evidence could swing the balance in favor of either party.

Causation was an essential element of the Plaintiffs' wrongful death claim. Dr. Fintel was Plaintiffs' sole expert regarding the causation issue, and the excluded testimony from his evidentiary deposition went directly to that issue. Dr. Zipper contends that other portions of his evidentiary deposition also support Plaintiffs' contention that the decedent would not have died but for the omissions by Dr. Zipper. As such, Dr. Zipper argues that Plaintiffs were not prejudiced by the exclusion of other portions of the evidentiary deposition. He relies upon this the following testimony by Dr. Fintel in his argument:

Q Doctor would you describe to the jury how it is that these medications; aspirin, beta blockers, how that would have prevented his—most likely prevented—his sudden cardiac death in December of '96.

* * *

THE WITNESS: All of our treatments reduce risk. No one treatment prevents absolutely any medical event, and that's true in cardiology; it is true in cancer; it is true in all of the conditions that we treat as physicians, but we use treatments to reduce the risk of an

---

**3.** This stands in contrast to the recent case of *Whitted v. Healthline Mgmt., Inc.*, 90 S.W.3d 470 (Mo.App. 2002). In *Whitted*, the defendants' expert testified at deposition that the precise cause of the decedent's heart attack could not be determined. *Id.* at 475–76. During his trial testimony, the expert changed his testimony, identifying cell necrosis as the cause of the decedent's death. *Id.* The Eastern District held that, under such circumstances, the trial court did not err in granting the plaintiffs' motion for new trial premised upon the expert's change in testimony. *Id.* at 476–77.

event, and we use aspirin specifically because it blocks the sticking together of platelets, and we know that platelets, small sticky blood cells circulating in the blood, are the first cells that stick to an area of a damaged blood vessel. As the platelets stick, a blood clot forms. That's why aspirin is the foundation of all treatment of coronary artery disease and has been the standard of care in this regard for more than a decade.

The beta blocker reduces the chance of sudden death; reduces the chance of another heart attack; reduces the chance of the development of heart failure; reduces the chance of a degree of progression of coronary artery disease. It doesn't mean that the medication prevents all of these events, but it reduces the chance that they will develop, and that's why we use these treatments, similarly for stopping smoking, weight loss, dietary change, and control of cholesterol with drugs to lower cholesterol.

While the above testimony discusses how various treatments reduce risk, nowhere in that testimony does Dr. Fintel articulate the conclusion that the decedent's death would have been averted had he been referred to a specialist. As such, this passage does not provide the same (or even equivalent) evidentiary support for the Plaintiffs' causation element as the testimony that was excluded by the trial court. We have reviewed the remainder of Dr. Fintel's testimony, and the net effect of the exclusion of the challenged portion of his testimony was that the jury was presented the underlying basis of his opinion regarding the causation issue but not his ultimate opinion regarding that issue.

Further, Dr. Zipper's counsel also emphasized the absence of such evidence in his closing argument. Thus, not only were the Plaintiffs prevented from putting forward Dr. Fintel's opinion testimony re-

garding the decedent's death, Dr. Zipper's counsel capitalized upon the exclusion of that evidence and drew the jury's attention to its absence. While we naturally do not know the underlying rationale for the verdict, the jury returned that verdict in favor of Dr. Zipper. The trial court conceded on the record that the case was very close. As such, the Plaintiffs appear to have a facially valid argument that the exclusion of the evidence had a material outcome on the result of the trial. The Plaintiffs have made an adequate showing of prejudice to entitle them to a grant of new trial.

## CONCLUSION

The trial court erred in excluding the causation testimony offered by Dr. Fintel in his evidentiary deposition. That testimony did not constitute improper surprise testimony in violation of the rules of discovery, so it could not be excluded from evidence upon that basis. The exclusion of the testimony was material and prejudicial, as it went to one of the essential elements of the case. Dr. Zipper's counsel in closing argument also emphasized the lack of such evidence. The trial court, therefore, also erred in denying Plaintiffs' motion for new trial, which raised the exclusion of Dr. Fintel's testimony as one of the grounds for retrial.

We, therefore, reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

HAROLD L. LOWENSTEIN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.