

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SHIRLEY A. RALLS, PERSONAL REPRESENTATIVE FOR THE ESTATE OF JAMES R. RALLS, | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD86617 |
| SOO LINE RAILROAD, | ) ) | Opinion filed:  March 25, 2025 |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF
LIVINGSTON COUNTY, MISSOURI
THE HONORABLE RYAN W. HORSMAN, JUDGE**

Division Two:  Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Shirley Ralls appeals from the trial court's judgment in favor of Soo Line Railroad Company following a jury trial.  Ralls sued Soo Line for wrongful death of her husband, who worked for Soo Line, alleging that Soo Line exposed her husband to carcinogens that caused his lung cancer, exclusive of husband's admitted use of tobacco products.  Ralls brings three points on appeal.  First, Ralls argues that the trial court erred in permitting Mr. Ralls's treating physician to offer a causation opinion because the treating physician was not disclosed as an expert.  Second,

Ralls argues the trial court erred in permitting the treating physician to offer opinions at trial that differed from his opinions offered during discovery. Finally, Ralls argues that the trial court erred in finding that the treating physician satisfied Missouri's expert witness statute, section 490.065.[1] We reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

In 2013, James Ralls was diagnosed with lung cancer, from which he died in 2015. Mr. Ralls smoked two to three packs of cigarettes a day for 50 years. He also worked for Soo Line Railroad Company from 1970 to 1996 and held various roles with Soo Line, including as a trackman, machine operator, and foreman.

In 2018, Mr. Ralls's wife, Shirley Ralls, filed a wrongful death negligence action against Soo Line under the Federal Employers' Liability Act (FELA). Ralls alleged that Mr. Ralls was exposed to known carcinogens during his work for Soo Line, specifically diesel exhaust and silica, and that exposure caused or contributed to his cancer. At trial, both parties agreed that his smoking contributed to cause Mr. Ralls's lung cancer; therefore, the trial focused on whether the known carcinogens that Mr. Ralls's alleged he was exposed to while working for Soo Line also contributed to cause his cancer.

This appeal centers around the testimony of Mr. Ralls's treating physician ("Treating Physician"), a radiation oncologist. Ralls disclosed the Treating Physician to Soo Line in response to Soo Line's interrogatories requesting the

---

[1] All statutory references are to RSMo 2016, as supplemented through June 13, 2018, the date Ralls filed her Petition for Damages in the trial court.

identities of all of Mr. Ralls's treating physicians. Neither party identified Treating Physician as a retained or non-retained expert. Soo Line noticed up the deposition of Treating Physician, and did actually depose him, twice – once during discovery and once to preserve his testimony for trial.

The Treating Physician was first deposed in April 2023, approximately 3 months prior to trial (the "discovery deposition") at the behest of Soo Line. At that deposition, the Treating Physician had access only to his initial consultation note.[2] That consultation note did not include Mr. Ralls's job history or smoking history, but it did state that Mr. Ralls had COPD, which evidenced heavy smoking. Rather than asking Treating Physician about the course of treatment, Soo Line asked him about the cause of Mr. Ralls's cancer. The Treating Physician was asked by Soo Line to assume Mr. Ralls had smoked for 50 years and worked as a trackman for a railroad. Based on these additional facts, the Treating Physician initially testified that Mr. Ralls's lung cancer was caused by his smoking. In support, the Treating Physician cited to a study about the rate of lung cancer in people who are heavy smokers. When questioned by Ralls's counsel, however, the Treating Physician acknowledged that he "can't render a correct opinion," because he did not have all the data, and ultimately expressed no opinion at all.

Because Treating Physician was unavailable for trial, three days before trial commenced he was again deposed (the "trial deposition") and, once again, at the

---

[2] Treating Physician no longer worked at the clinic at which he had treated Mr. Ralls, and thus did not have access to his patient file.

3

behest of Soo Line. At the trial deposition, Ralls questioned the Treating Physician extensively as to his treatment of her husband during his lung cancer treatment.[3] The intent of Ralls was to elicit the treatment of Mr. Ralls's cancer by Treating Physician.

Soo Line also questioned Treating Physician at the trial deposition. Specifically, Soo Line once again asked Treating Physician for the cause of Mr. Ralls's lung cancer. The Treating Physician testified that he had researched causes of lung cancer such as silica and diesel exhaust since his discovery deposition, and then cited these additional studies, including a study that determined that miners who were exposed to high levels of silica daily for 45 years faced an only 1.9% increased risk in developing lung cancer. In reliance upon these further studies, the Treating Physician opined that smoking was the sole cause of Mr. Ralls's lung cancer and that his exposure to diesel exhaust or silica did not contribute to his lung cancer.

The parties presented their case to a jury over five days. Motions in limine were heard to preclude the testimony of both Soo Line's and Ralls's retained experts. In general, Soo Line's experts posited smoking as the sole cause of Mr. Ralls's lung cancer, while Ralls's experts found other causes contributed to cause same. In addition, a motion in limine was heard to preclude Treating Physician's causation testimony. All such motions were denied.

---

[3] At the trial deposition, Ralls was able to provide Treating Physician with all treatment notes for this purpose.

During her opening statement, Ralls stated:

We absolutely agree, the Plaintiff says cigarette smoking was a cause of Mr. Ralls'[s] lung cancer. However, where we disagree with the railroad is we also believe that silica dust, which is also a known lung carcinogen, and diesel exhaust which is also a known lung carcinogen, contributed to the lung cancer.

Ralls thus framed the issue for the jury as follows: "The question here is: Was cigarette smoking the sole cause, the only cause of Mr. Ralls'[s] lung cancer?"

Upon the commencement of day 3 of trial, Ralls made motion to the trial court to reconsider its denial of her motion to exclude Treating Physician's causation testimony. Ralls pointed to the further research performed by Treating Physician after the discovery deposition which led to his determination of smoking as the sole cause. Ralls argued that Soo Line never identified Treating Physician as a non-retained expert and that Treating Physician's trial deposition testimony determining smoking was the sole cause of Mr. Ralls's lung cancer was a surprise on the eve of trial, given that Treating Physician had been unable to render such an opinion at his discovery deposition. After argument, said motion was denied.

In due course, Soo Line played Treating Physician's trial deposition in its entirety for the jury in open court. Upon the conclusion of the trial deposition, Ralls was permitted to read her cross-examination of Treating Physician from the discovery deposition.

During Ralls's closing argument, she conceded that Mr. Ralls bore some responsibility for his lung cancer: "Responsibility. We are accepting responsibility . . . we think he's 50 percent responsible for his lung cancer." Soo Line highlighted

5

the Treating Physician's testimony in its closing argument, emphasizing that "[s]omeone that Mr. Ralls trusted to treat him for his care, a doctor he selected" had opined "[s]moking is the sole cause" and "had articles" in support.

The jury returned a verdict in favor of Soo Line and the trial court entered judgment accordingly. Ralls filed a motion for new trial, arguing that the Treating Physician should not have been permitted to offer causation opinions because: (1) his causation opinions were not disclosed during discovery, (2) he was a non-retained and non-disclosed expert, (3) he did not satisfy section 490.065, and (4) his opinions were cumulative. The trial court denied the motion. This appeal follows.

## STANDARD OF REVIEW

The trial court has broad discretion to control discovery and admit evidence. *See Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997) ("The trial court has broad discretion to control discovery."); *Shallow v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018) ("The circuit court enjoys considerable discretion in the admission or exclusion of evidence.") (internal quotations omitted). "A circuit court abuses its discretion when its 'ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Shallow*, 554 S.W.3d at 881 (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)).

**ANALYSIS**

Ralls brings three points on appeal.  First, Ralls argues that the trial court erred in permitting Mr. Ralls's Treating Physician to offer a causation opinion because the Treating Physician was not disclosed as a non-retained expert. Second, Ralls argues the trial court erred in permitting the Treating Physician to offer opinions at trial that differed from his opinions offered during discovery. Finally, Ralls argues that the trial court erred in finding that the Treating Physician satisfied Missouri's expert witness statute, section 490.065.  Points I and II are dispositive of this appeal and will be addressed together.

**Point I and II**

Non-retained expert disclosures are governed by Rule 56.01(b)(7),[4] to-wit:

(7) *Trial Preparation: Non-retained Experts.*  A party, through interrogatories, may require any other party to identify each non-retained expert witness, including a party, whom the other party expects to call at trial who may provide expert witness opinion testimony by providing the expert's name, address, and field of expertise.  For the purpose of this rule 56.01(b)(7), an expert witness is a witness qualified as an expert by knowledge, experience, training, or education giving testimony relative to scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence.  Discovery of the facts known and opinions held by such an expert shall be discoverable in the same manner as for lay witnesses.

Missouri's discovery rules exist to "take the surprise out of trials of cases so that all relevant facts and information pertaining to the action may be ascertained in advance of trial."  *St. Louis Cnty. v. River Bend Ests. Homeowners' Ass'n*, 408

---

[4] All Rule references are to *Missouri Court Rules, Volume I -- State, 2018* unless otherwise noted.

7

S.W.3d 116, 133 (Mo. banc 2013) (quoting *State ex rel. Bush v. Elliott*, 363 S.W.2d 631, 636 (Mo. banc 1963)). "Discovery rules distinguish between facts and opinions held by non-retained experts from those held by experts who acquired facts and developed opinions in anticipation of litigation." *River Bend Ests. Homeowner's Ass'n*, 408 S.W.3d at 133. "[D]isclosure requirements for a non-retained witness are limited to their identity and their field of expertise." *Id.*

"A treating physician . . . has knowledge of the facts of the case and is not retained solely for the purpose of litigation." *Beaty v. St. Luke's Hosp. of Kansas City*, 298 S.W.3d 554, 559 (Mo. App. W.D. 2009).[5] "Although referred to as a non-retained expert, '[t]he treating physician is first and foremost a fact witness, as opposed to an expert witness.'" *Id.* (quoting *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 673 (Mo. banc 1993)). A treating physician is not automatically an expert witness, but "only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues." *Brandt*, 856 S.W.2d at 673.[6] When called as a treating physician, however, the physician's testimony is limited to opinions based on information obtained *during* the treating physician's care and treatment of the plaintiff, as well as medical knowledge generally known in the

---

[5] At the time *Beaty* was decided, the rule governing non-retained experts was Rule 56.01(b)(5). The former Rule 56.01(b)(5) is identical to the current Rule 56.01(b)(7).

[6] At the time *Brandt* was decided, Rule 56.01(b)(5) regarding non-retained experts had not yet become effective. However, as our Court did in *Beaty*, we rely on *Brandt* for its description of the role of a treating physician as a witness at trial.

treating physician's specialty area. *See Kehr v. Knapp*, 136 S.W.3d 118, 124 (Mo. App. E.D. 2004).

In deciding whether the trial court abused its discretion in permitting the opinions of a non-retained expert who was not properly disclosed during discovery, "we consider whether the challenged act by the trial court, under the totality of the circumstances, has resulted in prejudice or unfair surprise." *Travelers Com. Cas. Co. v. Vac-It-All Servs., Inc.*, 451 S.W.3d 301, 306 (Mo. App. E.D. 2014) (finding a trial court did not abuse its discretion in permitting a non-retained expert who was not disclosed as such to testify at trial because the opposing party was not prejudiced or unfairly surprised by the witness's testimony).

Here, the parties agree that, had Treating Physician been disclosed, he would have been disclosed as a non-retained expert regarding his causation opinions. Further, there is no question Treating Physician was the expert witness of Soo Line. It was Soo Line who inquired and sought his opinion as to causation. Soo Line was also the party who offered evidence of causation from Treating Physician at trial. Finally, Ralls asserts, and Soo Line concedes, that Treating Physician was not disclosed as an expert at all by Soo Line. As such, we must determine whether Ralls was unfairly surprised or prejudiced by such testimony. *Travelers Com. Cas. Co.,* 451 S.W.3d at 306. We find both surprise and prejudice.

Soo Line argues Ralls was not surprised by any failure of Soo Line to formally identify the Treating Physician as an expert. Soo Line states it initially learned of

Treating Physician when it propounded an interrogatory to Ralls requesting the "name, address of the person(s) or institution seen, the dates you received care, and the reason, disease, or conditions for which you sought consultation or treatment" of each medical provider Mr. Ralls had seen during his lifetime. Ralls disclosed that Mr. Ralls had been treated by the Treating Physician, a radiation oncologist, from approximately May 2013 to June 2015 for his lung cancer. Soo Line argues that by disclosing the Treating Physician's name, address, and field of expertise to Soo Line during discovery, Ralls had independent knowledge of the information required by Rule 56.01(b)(7) regarding the Treating Physician.

Soo Line's argument misses the heart of Ralls's claim. Ralls certainly knew the Treating Physician was a potential witness at trial; Treating Physician was listed on Ralls's witness list for trial as a fact witness as to the treatment of Mr. Ralls's cancer. Instead, Ralls is claiming that she was unaware that the Treating Physician would be testifying as an *expert* on the subject of causation, as opposed to a treating physician. Specifically, where Treating Physician could not render *any* definitive opinion on causation during the discovery deposition, at the trial deposition he rendered a specifically-targeted opinion as to causation supported by research performed *after* the discovery deposition into the effects of silica and diesel exhaust as potential causes of cancer. Ralls therefore claims she was unfairly surprised by the Treating Physician's definitive causation opinion offered for the

10

first time at trial.[7]  To determine whether Ralls was unfairly surprised or prejudiced by such testimony, we set forth an account of the Treating Physician's testimony during his depositions.

## A.    Discovery Deposition

The Treating Physician was first deposed on April 21, 2023.  At that deposition, the Treating Physician had access only to his initial consultation note.  Soo Line asked the Treating Physician if he had "any idea what the cause of [Mr. Ralls's] cancer was."  The Treating Physician responded,

> No, I don't have my intake forms that would have shown how much he smoked, and I don't know what his job was with the railroad.  I assume he's suing the railroad saying asbestos causes cancer, but he did have COPD, so I assume he was a heavy smoker.  So, if I were to guess, I would say smoking caused his lung cancer.

Soo Line continued its questioning of Treating Physician, advising that Mr. Ralls was a trackman for Soo Line, but not advising him of any other alleged causes of Mr. Ralls's cancer.  Ultimately, the Treating Physician was able to identify "smoking" as the  cause of Ralls' lung cancer.

Upon cross-examination conducted by Ralls's attorney, however, Treating Physician retracted his testimony that smoking was the cause of Ralls's lung cancer, and ultimately testified that "[w]hat I said could be completely wrong, 'cause I don't have all the data." The Treating Physician testified that when coming

---

[7] In arguing the Treating Physician offered a causation opinion for the first time *at trial*, Ralls is in essence referring to the trial deposition taken to preserve such testimony *for* trial.  This is so because the Treating Physician's opinions rendered *at trial* consisted simply of playing the videotaped trial deposition to the jury - at trial.

11

to a causation opinion, he generally reviews both a patient's medical records and relevant medical literature. However, he testified it was "very safe to say" he had never done so for Mr. Ralls. Other than stating he had reviewed articles relating to asbestos exposure and an article from Canada, read under a mistaken presumption the case related to asbestos exposure, the Treating Physician did not testify as to any reliance on any research or studies. Upon further questioning by Ralls's attorney, the Treating Physician acknowledged that additional information could change his testimony. He testified that, because he didn't have all the relevant data, he "can't render a correct opinion," and that what he had said in the deposition "could easily change" "when I saw the data." When counsel asked whether it was "purely speculation that Mr. Ralls's cancer was solely caused by his smoking history," Treating Physician responded that "you're right, I can't say because I have not reviewed everything. I'm agreeing with you."

Following this exchange, the Treating Physician agreed with Ralls's attorney that cancer is multifactorial and testified "multiple things" can cause someone's cancer. The Treating Physician testified the largest factor or trigger is smoking, but he also testified that he was aware diesel exhaust and silica dust could cause lung cancer.

## B.    Trial Deposition

In the trial deposition, the Treating Physician's was not only able to render an opinion as to causation, he could specifically state that, in his opinion, smoking was the "sole" cause of Mr. Ralls's lung cancer. In doing so, Treating Physician

12

effectively eliminated silica and diesel exhaust as even partial, potential causes of the cancer.

In support of his newfound opinion, the Treating Physician referenced several articles not referenced in his discovery deposition. The Treating Physician referenced the Centers for Disease Control website, a study conducted by a University of Chicago professor, a study published in the Canadian Public Journal of Health,[8] and a study from 2008 regarding the risk of cancer in heavy smokers. He summarized his opinions of each study thusly:

> He was working for a railroad for 17 years, and we also need to quantify how much he smoked. He smoked two to three packs for 50 years. Let's give him the benefit of the doubt and say it was two years [sic], although they teach us in medical school you round it up, and if it's alcohol, you double what they tell you.

> Okay. So let's say he only smoked two packs per year [sic]. How many can [sic] cigarettes are in a pack? 20 cigarettes are in a pack – per pack. Let's say he only smoked two packs per day, although he said it was more. That is 40 cigarettes per day, 1200 cigarettes per month, 14 cigarettes – 14,000 cigarettes per year. 700,000 cigarettes he smoked conservatively over those 50 years. So who is going to rationally think the 700,000 cigarettes, with this 24 to 30 percent chance of developing lung cancer, didn't cause it when there was only a 1.9 percent increased risk, increased over that if he had been in a mine for 45 years with that silica.

> ****

> Now it's true, if you're in a mine for 45 years every day, day and day out, with very high doses, around very high refined doses, it will increase your risk by 1.9 percent.

---

[8] This is the same study that the Treating Physician mentioned during his discovery deposition, but for a different purpose.

Counsel for Ralls objected to the Treating Physician's testimony. Soo Line asked the Treating Physician to explain where he had found such information, and he stated:

> A:     Well, I got that from – the CDC, they list there's a lot of poor data and studies on silica, and this is the article they list in the CDC. So this is the – you want good data, so this is probably the best article to cite.

At this point, counsel for Ralls moved to strike. Soo Line then asked the Treating Physician if he had any specific reasons why he did not believe diesel exhaust played a role in Mr. Ralls's cancer, and he answered:

> A.     There is actually an article examining diesel exhaust, and it's by a [Researcher], and she published this article in June 2012 in the Journal of the National Cancer Institute. This is the type of journal you want to look at. The National Cancer Institute's Journal, and she looked at miners, both above ground and below ground. Why do you want to look at miners? Because they have very high silica, much higher than mill workers.
>
> Q.     We're on diesel now.
>
> A.     I know. No, because they're exposed to silica but they have all their equipment uses diesel. So she looked at miners that worked above ground and below ground, and she looked specifically at their diesel exposure but they also got silica, so it's like a double bam, you know what I'm saying. Despite the diesel exposure they have with the level of equipment, if the patients worked above ground she didn't see any real change in instances of cancer versus smokers that didn't work around the diesel equipment.
>
> But what she did find, if you worked down in a mine, it's all enclosed, so that diesel built up. So then you could see a small percentage that was due to the diesel, but you didn't see it above ground. [Mr. Ralls] wasn't working underground in the mines as far as I'm aware of, unless I'm wrong, so I don't think diesel had any role to play in this.

Ralls's counsel again objected and moved to strike.[9]

---

[9] During the trial deposition, Ralls's counsel questioned the Treating Physician extensively regarding Mr. Ralls's medical records, which the Treating Physician did not have access to during his discovery deposition. The Treating Physician testified regarding

14

The jury watched the Treating Physician's trial deposition and heard Ralls's cross-examination of the Treating Physician from his discovery deposition.

## C.  Ralls was unfairly surprised and prejudiced

It is clear from the totality of the circumstances that Ralls was unfairly surprised and prejudiced by the Treating Physician's expert testimony at trial. This was plainly evidenced by the Treating Physician's testimony at the discovery deposition. Though initially stating to Soo Line's attorney that the cause of Mr. Ralls's cancer was smoking, Treating Physician then completely recanted such testimony. In particular, the Treating Physician testified that, because he did not have all the data, he "can't render a correct opinion." He testified that what he had said earlier in the deposition "could change when I saw the data, it could easily change. You're exactly right. What I said could completely be wrong, 'cause I don't have all the data, you're right." In fact, with respect to Mr. Ralls, the Treating Physician testified it was "very safe to say" that he had not complied with his *own methodology* when testifying to any such causation opinion. Similarly, when Ralls's counsel asked whether it was "purely speculation that Mr. Ralls's cancer was solely caused by his smoking history," the Treating Physician testified "you're right, I can't say because I have not reviewed everything. I'm agreeing with you. I cannot – 'cause I haven't reviewed his whole record." From this testimony, it is evident that the Treating Physician did not, and could not, offer any opinion as to

the treatment Mr. Ralls received and explained what various radiologic images from Mr. Ralls's course of treatment demonstrated. This is not at issue in the appeal.

15

the cause of Mr. Ralls's lung cancer at the discovery deposition, let alone give any definitive opinion that smoking was the *sole* cause.

Instead, the Treating Physician's causation opinions were, for the very first time, firmly stated at the trial deposition. There, for the first time, the Treating Physician opined that the sole cause of Mr. Ralls's cancer was smoking and definitively ruled out diesel exhaust and silica as contributing causes. Not only were these new opinions where the Treating Physician previously had none, but such opinions were also *based* on research and studies not disclosed during the discovery deposition and not researched by Treating Physician during his treatment of Mr. Ralls. Specifically, multiple articles and studies previously unreferenced were relied upon by the Treating Physician as the basis of his opinions. In particular, the Treating Physician's opinion as to the effect of silica was largely based on a study concerning miners that was not discussed in his discovery deposition. Similarly, when asked about the causal role of diesel exhaust, the *sole* basis for the Treating Physician's opinion was another article he had not previously reviewed.

These are the exact circumstances our court contemplated in previously discussing when a party is surprised by a change in an expert's opinion:

> "'Discovery rules and case law establish the principle that when an expert witness has been deposed and ***later changes his opinion before trial or bases that opinion on new or different facts*** from those disclosed in the deposition, it is the duty of the party intending to use the expert witness to disclose that new information to his adversary, thereby updating the responses made in the deposition.'" *Snellen ex rel. Snellen v. Capital Region Med. Ctr.*, 422 S.W.3d 343, 353 (Mo. App. W.D. 2013) (quoting

16

*Redel v. Capital Region Med. Ctr.*, 165 S.W.3d 168, 175 (Mo. App. E.D. 2005) (emphasis added)). The purpose of this principle is "to protect a party from the failure of an expert to disclose his opinion or the facts he bases that opinion on during the discovery process." *Sherar* [*v. Zipper*, 98 S.W.3d 628,] 633 [(Mo. App. W.D. 2003)]. If an expert provides different testimony from that disclosed in discovery, then the trial court is vested with discretion to determine how to remedy the situation. *Beaty v. St. Luke's Hosp.*, 298 S.W.3d 554, 560 (Mo. App. W.D. 2009). ***Surprise exists when "an expert witness suddenly has an opinion where he had none before, renders a substantially different opinion than the opinion disclosed in discovery, uses new facts to support an opinion, or newly bases that opinion on data or information not disclosed during the discovery deposition."*** *Sherar*, 98 S.W.3d at 634. Surprise cannot be manufactured, however. "The attorney deposing the witness must ask for the expert's opinion and/or the underlying facts or data." *Id.* A party cannot claim surprise based on "new opinions" as to matters about which the expert witness has not been asked during discovery.

*Beverly v. Hudak*, 545 S.W.3d 864, 869-70 (Mo. App. W.D. 2018) (last emphasis added). "This principle [to update an adversary when an expert's opinion changes] 'is not intended as a mechanism for contesting every variance between discovery and trial testimony [because] [i]mpeachment of the witness will accomplish that goal.'" *Shallow*, 554 S.W.3d at 881 (quoting *Sherar*, 98 S.W.3d at 634) (first alteration added)). Rather, its purpose is to relieve a party "who is genuinely surprised at trial." *Shallow*, 554 S.W.3d at 881.

Moreover, as other Missouri cases have demonstrated, this principle is not applicable solely to *retained* experts. *See id.* at 881-83 (analyzing testimony of defendant-as-expert); *Eagan v. Duello*, 173 S.W.3d 341, 347 (Mo. App. W.D. 2005) (same); *River Bend Ests. Homeowners' Ass'n*, 408 S.W.3d at 133 (employee as non-retained expert). Applying the above caselaw to the case at hand demonstrates Ralls was genuinely surprised at trial. At the discovery deposition,

17

the Treating Physician testified he was unable to render an accurate opinion as to whether smoking was the sole cause of Mr. Ralls's cancer because he did not "have all data." Yet, at the trial deposition, the Treating Physician offered his opinion that smoking *was* the sole cause of Mr. Ralls's cancer, and based such opinion on previously unreviewed and undisclosed articles. In other words, the Treating Physician "'suddenly ha[d] an opinion where he had none before'" and "'newly base[d] that opinion on data or information not disclosed during the discovery deposition.'" *Beverly*, 545 S.W.3d at 870 (quoting *Sherar*, 98 S.W.3d at 634).

Our court has previously found the exclusion of expert testimony appropriate under circumstances similar to those here. In *Green v. Fleishman*, 882 S.W.2d 219 (Mo. App. W.D. 1994), the plaintiff's medical expert on causation testified at his deposition that he had no opinion as to whether the plaintiff's condition resulted from blood levels of an antibiotic that exceeded maximum therapeutic levels. *Id.* at 220-21. Similar to the Treating Physician here, the medical expert stated he had no data as to what occurred and could therefore only offer his speculation. *Id.* However, approximately fourteen months later at trial, the medical expert testified that he had data from which he could infer it was likely the levels of the antibiotic increased to a toxic range. *Id.* at 221. The defendants thereafter moved to strike the medical expert's trial testimony "on the grounds that it differed from his deposition testimony and constituted an unfair surprise." *Id.* The trial court granted the motion to strike, and our court affirmed on appeal, holding "there was simply a 180 degree change from no opinion to one of

18

negligence." *Id.* at 223. If such a change in the opinion of a *disclosed* expert results in unfair surprise to a party, the unfair surprise is simply more so when the change in opinion is from an *undisclosed* expert as the Treating Physician was here. As such, we agree with Ralls that she was unfairly surprised by the Treating Physician's expert testimony at trial.

Here, Ralls made clear to the trial court their surprise with regard to the trial deposition. At the commencement of Day 3 of trial, Ralls's attorney stated, "Plaintiff would like to renew their motion for exclusion of Treating Physician with regard to his causation opinions," allowing him to testify only to his treatment of Mr. Ralls. "At the time of [the discovery deposition], he did not make these opinions as to the cause of Mr. Ralls' cancer." "[A]t the trial deposition [], all of a sudden [Treating Physician] got these opinions that he knows all this stuff about diesel exhaust and all this stuff about silica." "[N]ow all of a sudden he's telling us that [] smoking is the sole cause and he's ruled out diesel exhause [and] silica. None of this was disclosed in discovery. These are all brand new opinions." The trial court asked for clarification on Ralls's argument, to which Ralls responded:

> And we're in trial when we are doing that videotape last Friday, July 14th. And for the first time, we are getting these causation opinions now ruling out silica and ruling out diesel, when in his discovery dep [sic], he did not rule them out. He just simply said, "I don't know."

> So point here is if [Soo Line] intended to call Treating Physician as an expert as to causation, those things needed to be disclosed before his trial deposition.

When asked by the trial court to respond, Soo Line stated Treating Physician is "not a *retained* expert," and suggested that he had been disclosed "for the

19

purposes of expert opinion," a fact we do not find in the record. (emphasis added). Thereafter, the trial court overruled Ralls's motion.

Here, based upon the representations asserted by Ralls as to the deposition testimony, all of which are in harmony with our review of the case, it is evident genuine surprise occurred when specific causation opinion testimony was presented where there had been no such opinion testimony before.

Moreover, we find prejudice also occurred. First, the critical aspect of the Treating Physician's trial testimony was his new-found opinion that smoking was the *sole cause* of Mr. Ralls's cancer – something contrary to what Ralls asserted. This is significant because the issue in this trial was not whether smoking caused Mr. Ralls's lung cancer. Instead, the issue at trial was the *extent* to which Mr. Ralls's alleged exposure to carcinogens at the railroad contributed to cause his cancer. Indeed, from the opening statements at trial, Ralls acknowledged that Mr. Ralls's smoking history contributed to cause his lung cancer, and accepted "50 percent" responsibility for Mr. Ralls's lung cancer during closing arguments.

The significance lies in the fact that, pursuant to Ralls's FELA cause of action, a death need only result "in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. More pointedly, "[u]nder [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, *even the slightest*, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011) (quoting *Rogers v. Missouri Pac. R. Co.*, 352

U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)) (second alteration in original) (emphasis added). Thus, the Treating Physician's causation opinion went directly to the most significant issue at trial, for if smoking was the sole cause of Mr. Ralls's disease, and silica and/or diesel exhaust did not play any – not "even the slightest" – part, Ralls's claim under FELA must fail.

Second, the Treating Physician first opined that smoking was the sole cause of Mr. Ralls's cancer at the trial deposition, which took place merely three days prior to the start of trial. Considering the Treating Physician provided no such opinion at the discovery deposition, Ralls ultimately had no notice *prior* to the trial deposition of this testimony or the research articles upon which Treating Physician's relied. Further, the genuine surprise prevented Ralls from performing any effective cross-examination of the Treating Physician at the trial deposition. Indeed, at trial Ralls could only read into evidence the cross-examination of the Treating Physician from the discovery deposition as impeachment.

Thirdly, Soo Line emphasized the Treating Physician's causation opinion in closing arguments, to wit:

> And the thing that I would throw in to support that, is when you look at this situation, and someone argues, well, he paid his experts and he paid their experts. But you just saw the video this morning, a real doctor, not just somebody we pull off the street. Someone that Mr. Ralls trusted to treat him for his case, a doctor he selected. And what did that doctor say? Smoking is the overwhelming cause. Smoking is the sole cause. And he told you why.

> He did more work – he gave you more information than [Ralls's expert on causation] gave you his whole time on the stand. He had articles. He told you what was going on.

Soo Line not only highlighted the Treating Physician's causation opinion and the articles on which he based such opinion, it also utilized same to discredit Ralls's own causation experts. It is without doubt that such a "his own doctor said it" closing argument is very powerful, and is an effective tool in discrediting any paid expert's testimony. Soo Line knew that, and utilized the "his own doctor said it" argument effectively.

Soo Line wove the theme of the "hired gun" expert versus a "real doctor" throughout its closing. Of Ralls's first expert, Soo Line began, "[Ralls's attorneys] have hired him 70 times in the 70 cases that they have. He's made a good bit of money working for [Ralls's attorneys]." In introducing its closing argument regarding Ralls's second expert, Soo Line began, "[Expert] never did any work on cancer epidemiology. First time [he] showed up in lung cancer analysis is when [Ralls's attorneys] called him, gave him three cases, two lung cancer and one another [sic] cancer." While wide latitude is granted in closing arguments, the prejudicial effect here, where there is no question testimony has come about by surprise, is real. Further, while we readily understand Ralls and Soo Line each had their own experts, having the "real doctor" trump card in one's hand is of great benefit, especially when the timing is such that one's opponent cannot address it. Under these circumstances, we agree with our Supreme Court that "[u]ntimely disclosure or nondisclosure of expert witnesses is so offensive to the underlying purposes of the discovery rules that prejudice may be inferred." *Wilkerson*, 943

22

S.W.2d at 649 (citing *Ellis v. Union Elec. Co.*, 729 S.W.2d 71, 75 (Mo. App. E.D. 1987)).

Further, we note that while the Treating Physician was identified by Ralls as a treating physician and rightly named as such in her interrogatory answers to Soo Line, his deposition testimony at the behest of Soo Line fell outside the scope of permissible testimony by a treating physician. As explained, a treating physician may properly testify to opinions regarding causation that are developed based upon information obtained during the course of his care and treatment. See *Kehr*, 136 S.W.3d at 123-24. Conversely, a treating physician – in his capacity as a treating physician – cannot testify to opinions developed in anticipation of litigation or trial, or based upon material that was not generated during the course of care and treatment. When such occurs, a treating physician is no longer testifying simply in his or her treating physician capacity. *See Brandt*, 856 S.W.2d at 673; *Kehr*, 136 S.W.3d at 124.

The Treating Physician's opinions in this case fall into this latter category of impermissible testimony. The record clearly demonstrates that in forming his opinion that smoking was the sole cause of Mr. Ralls's cancer, the Treating Physician relied upon studies and articles he did not obtain while caring for Mr. Ralls. Rather, Treating Physician conducted this research in preparation for the trial deposition, well after his care and treatment of Mr. Ralls had ended, and cited numerous studies to support his opinion when asked at the trial deposition where he found the information he had cited therein.

Ultimately, when Ralls's attorney stated "I didn't ask you to look anything up[,]" the Treating Physician testified, "This is something I do as an oncologist. This is part of our job knowing what's available and what's at risk so we know what to look for as you're seeing patients." While this may be what an oncologist does when "seeing patients," here his patient had been deceased for at least seven years when Treating Physician did his research, thereby rendering it not in the realm of treating Mr. Ralls. Rather, the Treating Physician was researching in preparation for trial, not as a treating physician, thereby rendering his opinions based upon such research outside the scope of permissible testimony for a treating physician.

When reviewing the totality of the circumstances, we find that Ralls was unfairly surprised and prejudiced by the Treating Physician's testimony at trial. Thus, the trial court abused its discretion in permitting the Treating Physician to testify as to causation. Points I and II are granted.

Because of our holdings in Points I and II, we need not address Ralls's remaining point on appeal.

## CONCLUSION

The trial court's judgment is reversed and remanded to the trial court for new trial.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.